IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| PRAGMATUS AV, LLC, | CASE NO. 2:10-cv-00560-HCM/FBS |
| Plaintiff | |
| v. | |
| FACEBOOK, INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF FACEBOOK INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Justin P.D. Wilcox (Va. Bar No. 66067)
jwilcox@cooley.com
Scott A. Cole (Va. Bar No. 74771)
scole@cooley.com
COOLEY LLP
One Freedom Square, Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile:  (703) 456-8100

*Attorneys for Facebook, Inc.*

Dated:  January 21, 2010

## Table of Contents

**Page**

I. SUMMARY OF THE ARGUMENT ................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................. 1

    A. Facebook Has No Connection to this District ........................................................ 1

    B. Pragmatus Lacks a Significant Connection to this District ................................... 2

    C. The Large Majority of Potential Non-Party Witnesses Reside in the Northern District of California, and None Reside in Virginia .............................. 3

III. ARGUMENT ...................................................................................................................... 3

    A. Legal Standard ....................................................................................................... 3

    B. This Action Could Originally Have Been Brought in the Northern District of California ............................................................................................................. 4

    C. The Convenience Factors and Interests of Justice Overwhelmingly Favor Transfer .................................................................................................................. 5

        1. The Convenience of the Parties and Access to Sources of Proof .............. 5

        2. The Availability of Compulsory Process and the Convenience of Non-Party Witnesses ................................................................................. 7

        3. The Cost of Obtaining the Attendance of Witnesses ................................ 8

        4. The Interest in Having Local Controversies Decided at Home ................ 9

        5. The Court's Familiarity with the Applicable Law .................................. 10

        6. The Interests of Justice ............................................................................ 10

    D. Plaintiff's Choice of Forum Is Not Entitled To Substantial Weight .................... 12

IV. CONCLUSION ................................................................................................................. 13

# Table of Authorities

**Page**

**CASES**

*Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*,
 702 F. Supp. 1253 (E.D. Va. 1988) ..................................................................................4, 12

*Collaboration Properties, Inc. v. Polycom, Inc.*,
 Case No. 02-cv-04591-MMC (N.D. Cal. filed Sept. 23, 2002) ...............................................10

*Collaboration Properties, Inc. v. Tandberg ASA*,
 Case No. 05-cv-01940-MHP (N.D. Cal. filed May 11, 2005) ................................................10

*In re Genentech*,
 566 F.3d 1338 (Fed. Cir. 2009) ..........................................................................................6, 7, 8

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
 71 F. Supp. 2d 517 (E.D. Va. 1999) ...........................................................................................12

*Koh v. Microtek Int'l, Inc.*,
 250 F. Supp. 2d 627 (E.D. Va. 2003) .........................................................................................12

*Lycos, Inc. v. TiVo, Inc.*,
 499 F. Supp. 2d 685 (E.D. Va. 2007) ..............................................................................4, 5, 13

*In re Microsoft Corp.*,
 Misc. No. 944, slip op. (Fed. Cir. Jan. 5, 2011) ..................................................................4, 6

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
 230 F. Supp. 2d 655 (E.D. Pa. 2002) .........................................................................................12

*Samsung Elecs. Co. v. Rambus, Inc.*,
 386 F. Supp. 2d 708 ( E.D. Va. 2005) ........................................................................................5

*T.S. Tech USA Corp.*,
 552 F.3d 1315 (Fed. Cir. 2008) ..............................................................................................5, 9

*U.S. Ship Mgmt. v. Maersk Line, Ltd.*,
 357 F. Supp. 2d 924 (E.D. Va. 2005) .........................................................................................4

**STATUTES**

28 U.S.C. § 1391(b) .................................................................................................................4, 5

28 U.S.C. § 1404(a) ....................................................................................................1, 4, 12, 14

35 U.S.C. § 102(b) ........................................................................................................................11

Defendant Facebook, Inc. ("Facebook"), by and through its undersigned counsel, respectfully moves this Court to transfer this case to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

## I. SUMMARY OF THE ARGUMENT

The center of gravity of this patent infringement action lies not in the Eastern District of Virginia, but rather in the Northern District of California. Defendant Facebook is headquartered in Palo Alto, California, which is located in the Northern District of California, and the vast majority of its potential witnesses and potentially relevant documents are located in that district. Furthermore, the bulk of the likely non-party witnesses—the named inventors and one previous owner of the patents-in-suit—reside in the Northern District of California. In stark contrast, Plaintiff Pragmatus AV, LLC ("Pragmatus") has little connection to this District—having registered to do business in the Commonwealth of Virginia less than six months before filing suit here. Furthermore, the alleged acts of infringement in this District bear no particular relation to this District and could have occurred in any district in the nation. As will be explained in detail below, the Court should transfer this action to the Northern District of California pursuant to Section 1404(a) because that district is "clearly more convenient" than the Eastern District of Virginia for litigation of this dispute.

## II. FACTUAL BACKGROUND

Pragmatus, a non-practicing entity, filed the Complaint in this action against Facebook on November 15, 2010, alleging direct and indirect infringement of U.S. Patent Nos. 7,421,470 ("the '470 patent") and 7,433,921 ("the '921 patent") (collectively, "patents-in-suit"). Pragmatus alleges that Facebook infringes one or more claims of each of these patents by "making, using, offering for sale, selling and/or practicing" unidentified methods or systems "including through

Facebook Chat" or by inducing end users to infringe or contributing to end users' infringement of the patents-in-suit by using Facebook Chat. *See* Compl. ¶¶ 8-9, 12-13.

### A.  Facebook Has No Connection to this District

Facebook is a Delaware corporation headquartered in Palo Alto, California, which is located in the Northern District of California. Farren Decl. ¶ 2 (hereinafter referred to as "Facebook Decl."). Insofar as the Complaint identifies any Facebook accused systems or services, (Compl. ¶¶ 8, 12)[1], the vast majority of Facebook employees with knowledge of the development, implementation, and operation of such systems or services are located in Facebook's Palo Alto headquarters. Facebook Decl. ¶ 3. Likewise, the vast majority of likely sources of proof, including documentation for such systems or services, are located in Facebook's Palo Alto headquarters. *Id.* Facebook does not have any offices or technical employees located in Virginia. *Id.* ¶ 4.

### B.  Pragmatus Lacks a Significant Connection to this District

Pragmatus is a recently created limited liability company located in Alexandria, Virginia. Ex. 1. Pragmatus filed its business registration with the Commonwealth of Virginia on June 9, 2010. *Id*. Although Pragmatus alleges in its Complaint that its principal place of business is in Alexandria, Virginia, it is unknown whether Pragmatus conducts any actual business in this District beyond filing lawsuits in this forum. Ex. 2. The inventions of the patents-in-suit now owned by Pragmatus were previously owned by different business entities located in the Northern District of California. For example, the original patent application from which each of the patents-in-suit is descended, was assigned to Vicor Inc., which was located in Palo Alto, California. Ex. 3. Similarly, a later assignee of the patents, Avistar Communications

---

[1]Facebook has moved to dismiss Pragmatus's vague allegations of direct infringement, or in the alternative, for a more definite statement.

Corporation ("Avistar"), is located in San Mateo, California. *Id.* Significantly, at least two of the named inventors of the patents-in-suit are officers of Avistar: Gerald Burnett is chairman of Avistar; Chris Lauwers is its Chief Technology Officer. *See* http://www.avistar.com/company/Video-Conferencing-Service.html (last visited on Jan. 21, 2011); http://www.avistar.com/company/Teleconferencing-System-92.html (last visited on Jan. 21, 2011). In January 2010, Avistar assigned the patents-in-suit to Intellectual Ventures, a well known aggregator of patents, for eleven million dollars. Ex. 2. Pragmatus subsequently acquired the patents-in-suit from Intellectual Ventures on June 16, 2010—only one week after Pragmatus was formed and filed its business registration in the Commonwealth. Exs. 3, 1.[2]

### C. The Large Majority of Potential Non-Party Witnesses Reside in the Northern District of California, and None Reside in Virginia

The large majority of potential non-party witnesses reside in the Northern District of California. Three of the five named inventors reside in the Northern District of California: Chris J. Lauwers (Mountain View, CA); Keith A. Lantz (Los Altos, CA); and Gerald J. Burnett (Atherton, CA).[3] Exs. 4-6. The other two inventors—Lester Ludwig and Emmett Burns—reside in Texas and Montana, respectively. Exs. 7-8. Furthermore, as explained above, two of the previous owners of the patents–in-suit—Vicor and Avistar —have a significant connection to the Northern District of California: Vicor was located in Palo Alto, California; Avistar is currently located in San Mateo, California. Indeed, Avistar attempted to license related patents in the family of the patents-in-suit and participated in litigation involving such patents in the Northern District of California. Ex. 9 ¶ 50. Significantly, none of the likely non-party witnesses in this action are located in Virginia.

---

[2] The terms of that assignment of the patents-in-suit to Pragmatus are not publicly available.
[3] The same five individuals are listed as inventors on both the '470 and the '921 patents.

3

**III.    ARGUMENT**

    **A.  Legal Standard**

A district court may transfer a civil action to any other district where the action might originally have been brought if doing so would serve the convenience of the parties and witnesses and the interests of justice. 28 U.S.C. § 1404(a). A court must perform a two-step analysis to determine if a transfer is appropriate under Section 1404(a): first, the court must determine whether the action could originally have been brought in the proposed transferee forum; and second, the court must determine whether transferring the case would serve the convenience of the parties and witnesses and the interests of justice. *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 689 (E.D. Va. 2007).

To determine whether transferring a case would serve the goals of convenience and justice, this Court considers six factors: (1) the convenience of the parties and witnesses; (2) the cost of obtaining the attendance of witnesses; (3) the availability of compulsory process; (4) the interest in having local controversies decided at home; (5) in diversity cases, the court's familiarity with the applicable law; and (6) the interest of justice. *U.S. Ship Mgmt. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 936 (E.D. Va. 2005). Although the plaintiff's choice of forum is generally a significant consideration in the transfer analysis, it is by no means dispositive. *Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988). Indeed, the more insubstantial the connection between a plaintiff's choice of forum and the underlying cause of action, the less weight a Court will afford to that choice. *Id.* at 1256; *see also In re Microsoft Corp.*, Misc. No. 944, slip op. at 7-8 (Fed. Cir. Jan. 5, 2011) (granting mandamus and transferring where plaintiff incorporated in Texas shortly before filing suit in the Eastern District of Texas) (attached as Ex. 14).

### B. This Action Could Originally Have Been Brought in the Northern District of California.

Pragmatus could have brought suit against Facebook in the Northern District of California. 28 U.S.C. § 1391(b) provides that a civil action not founded on diversity jurisdiction may be brought in any judicial district where any defendant resides. Facebook resides in the Northern District of California: its principal place of business is located in Palo Alto, which falls within the Northern District of California. Facebook Decl. ¶ 2. Therefore, the Northern District of California is a venue in which this action could originally have been brought under the first prong of Section 1391(b).

### C. The Convenience Factors and Interests of Justice Overwhelmingly Favor Transfer.

Once the Court has determined that this action could have been brought in the Northern District of California, it must consider whether transfer would serve the convenience of the parties and non-party witnesses and the interests of justice. In analyzing the convenience of the parties and witnesses, this Court "considers factors such as the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory processes.'" *Lycos*, 499 F. Supp. 2d at 693 (citing *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 717 n.13 ( E.D. Va. 2005)). These factors demonstrate that the Northern District of California is clearly the more convenient venue in which to litigate the parties' dispute.

#### 1. The Convenience of the Parties and Access to Sources of Proof

The factors of convenience of the parties and access to sources of proof overwhelmingly favor transfer to the Northern District of California.

Facebook is headquartered in the Northern District of California. Significantly, the vast majority of Facebook employees with knowledge of the development, implementation, and operation of the accused systems or services are located in Facebook's Palo Alto headquarters in

5

the Northern District of California. Facebook Decl. ¶ 3. Moreover, the likely sources of proof, including documentation for such systems or services, are also located in Facebook's Palo Alto headquarters. *Id.*; s*ee T.S. Tech USA Corp.*, 552 F.3d 1315, 1320-21 (Fed. Cir. 2008) (finding that the convenience of access to sources of proof is not diminished by the electronic nature of such evidence). Indeed, location of potentially relevant documentation is particularly important here because "[i]n patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Therefore, the Northern District of California would indisputably be a more convenient forum for Facebook to litigate this case.

Pragmatus was formed under the laws of Virginia and registered to do business in the Commonwealth on June 9, 2010—only one week before it purchased the patents-in-suit. Ex. 1; Ex. 3. Pragmatus has no apparent connection to this District, and though the location of its purported principal place of business is Alexandria, Virginia, it is unknown whether Pragmatus possesses any documents regarding the patents-in-suit or has any employees who work in Virginia. Given that Pragmatus became the assignee of the patents-in-suit seven months ago and played little if any apparent role in their prosecution, there is no clear convenience to Pragmatus in litigating in this District. Conversely, there would be no apparent inconvenience to Pragmatus if it were required to litigate its claims in the Northern District of California.

Significantly, the Federal Circuit recently held that courts need not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.*, Misc. No. 944, slip op. at 5 (Fed. Cir. Jan. 5, 2011). In *In re Microsoft*, the plaintiff argued that its choice of forum—the Eastern District of Texas—should be upheld because it maintained an office in that district. *Id.* at 5. But the

6

Federal Circuit rejected that argument, explaining that the plaintiff's incorporation in Texas shortly before filing suit made clear that plaintiff's decision to open a Texas office was "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue." *Id.* at 6-7. Therefore, the Federal Circuit accorded "little consideration" to plaintiff's corporate domicile in its convenience analysis and concluded that the Western District of Washington was the more convenient forum because accused infringer Microsoft's potential witnesses and relevant documents were located at its headquarters in that district. *Id.* at 3, 7 (internal quotation omitted) (granting petition for mandamus and ordering transfer to Western District of Washington).

Here, the Court should similarly accord little consideration to Pragmatus's corporate domicile. Pragmatus was formed under the laws of Virginia shortly before purchasing the patents-in-suit and filing this suit. Thus, there can be little doubt that Pragmatus's decision to locate its office in Alexandria, Virginia was made in anticipation of this litigation to manipulate venue. By contrast, as explained above, Facebook has significant connections to the Northern District of California, and the vast majority of potential witnesses and relevant documents are located in its headquarters in that district. Therefore, the factors of convenience of the parties and witnesses and access to sources of proof overwhelmingly favor the transfer of this case to the Northern District of California. *See In re Genentech*, 566 F.3d at 1345 (finding that transfer was favored where a substantial number, though not all, of the material witnesses resided in the transferee district).

### 2. The Availability of Compulsory Process and the Convenience of Non-Party Witnesses

The availability of compulsory process also overwhelmingly favors transfer of this case to the Northern District of California. If this case is transferred to the Northern District of

7

California, three of the five inventors of the patents-in-suit would be subject to compulsory process. Chris Lauwers (Mountain View, CA), Keith A. Lantz (Los Altos, CA), and Gerald J. Burnett (Atherton, CA) all reside in the Northern District of California. Exs. 4-6. The testimony of the inventors will be relevant to a number of critical issues in this litigation, including at least conception and reduction to practice of the inventions embodied in the patents-in-suit, the prosecution of the patents-in-suit, the scope of the claims, invalidity, and inequitable conduct. Securing these critical witnesses' attendance at trial—instead of viewing excerpts of videotaped depositions—would undoubtedly better serve the finder of fact on these issues.

Furthermore, if the case were transferred to the Northern District of California, Avistar—a previous owner of the patents-in-suit—also would be subject to compulsory process. Avistar is located in San Mateo, California. *See supra* at 3. Avistar's involvement with the patents-in-suit suggests that it will have knowledge regarding at least: (1) the development of the inventions embodied in the patents-in-suit; (2) the prosecution of those patents; (3) secondary factors of nonobviousness relevant to an invalidity analysis; and (4) reasonable royalty and damages issues. Indeed, two of the named inventors are current officers of Avistar: Gerald Burnett is chairman of Avistar and Chris Lauwers is its Chief Technology Officer. *Id.* at 4. Avistar previously licensed and litigated related patents in the family of the patents-in-suit. Ex. 9 ¶ 50. In addition, Avistar's sale of the patents to Intellectual Ventures provides Avistar with important knowledge regarding the market value of the patents. Therefore, Avistar will likely be a significant third party in this litigation.

Because these non-party witnesses are located within the Northern District of California, it is self-evident that transfer of this case to that venue would also significantly increase the convenience to all of these witnesses. Accordingly, the factors of the availability of compulsory

8

process and the convenience of non-party witnesses overwhelmingly favor transfer of this case to the Northern District of California. *See In re Genentech,* 566 F.3d at 1345 (finding transferee venue's compulsory subpoena power over witnesses favors transfer).

### 3. The Cost of Obtaining the Attendance of Witnesses

As explained above, Facebook's potential witnesses work in the Northern District of California. Furthermore, Facebook's trial counsel is also located in the Northern District of California. Thus, if this case went to trial in the Northern District of California, Facebook would incur virtually no costs for overnight travel for either its employees or counsel. However, if Facebook is required to litigate this dispute here, it would incur significant airfare, lodging, and meal expenses for its employees and counsel traveling from the West Coast.

Pragmatus will likely have few potential party witnesses in this case. Pragmatus only recently acquired the patents-in-suit. As a result, its employees will likely have no personal knowledge regarding the patents-in-suit prior to June 2010. In any event, it is unknown whether any potential Pragmatus witnesses actually work or reside within this District.

Proceeding in the Eastern District of Virginia would also impose additional unnecessary cost to most of the relevant non-party witnesses. As explained previously, likely material witnesses from Avistar Communications and three of the five inventors reside in the Northern District of California. To the extent that these witnesses were to testify at trial, transfer of this case to that venue would eliminate the travel, lodging, and meal costs incurred by these witnesses, as well.

On balance, the cost of obtaining attendance of witnesses strongly favors transfer to the Northern District of California. *See T.S. Tech*, 551 F.3d at 1320 (recognizing the significant expense and inconvenience of long distance travel for material witnesses).

### 4. The Interest in Having Local Controversies Decided at Home

This factor strongly favors transfer to the Northern District of California. Facebook is headquartered in the Northern District of California and has been doing business there for more than six years. Facebook Decl. ¶ 2. Furthermore, Avistar and three of the five named inventors are located in the Northern District of California. By contrast, Pragmatus has little connection with this forum, having registered to do business in the Commonwealth of Virginia little more than seven months ago in June 2010. Ex. 1. Therefore, Pragmatus's patent infringement suit against Facebook is a controversy centered in the Northern District of California, and should be litigated there.

### 5. The Court's Familiarity with the Applicable Law

This factor is neutral. Patent law is a federal issue and is properly before any of the federal district courts. In addition, this District and the Northern District of California are both experienced patent litigation fora.

### 6. The Interests of Justice

The interests of justice favor transfer to the Northern District of California based upon that court's familiarity with related patents within the family of the patents-in-suit. Collaboration Properties, Inc. ("Collaboration Properties")—another previous owner of the patents-in-suit—litigated two patent infringement suits involving related patents in the Northern District of California. *See, e.g., Collaboration Properties, Inc. v. Tandberg ASA*, Case No. 05-cv-01940-MHP (N.D. Cal. filed May 11, 2005) ("Tandberg litigation") (stipulated dismissal granted on February 22, 2007 (Dkt. No. 350)) (docket attached as Ex. 10); *Collaboration Properties, Inc. v. Polycom, Inc.*, Case No. 02-cv-04591-MMC (N.D. Cal. filed Sept. 23, 2002) ("Polycom litigation") (dismissed pursuant to parties' settlement on November 15, 2004 (Dkt. No. 508)) (docket attached as Ex. 11). In both cases, the accused infringers asserted the affirmative

10

defense of inequitable conduct in connection with the prosecution of Patent Application No. 08/131,523[4]—the parent application of the patents-in-suit here. Ex. 12 at 5-6; Ex. 13 at 7; Ex. 9 ¶¶ 41-43. The accused infringers alleged that Vicor—the original owner of the parent application of the family of patents-in-suit—failed to disclose to the PTO that it had sold a system that embodied the inventions claimed in the parent application more than a year before it filed that application. *Id.*[5] The accused infringers claimed that such inequitable conduct in connection with the parent application infected the downstream patents. Significantly, in the Tandberg litigation, Tandberg took discovery on this on-sale bar inequitable conduct theory, and successfully moved for leave to amend its answer to add the theory. Ex. 13 at 7. The Tandberg litigation subsequently settled less than one month after the Northern District of California granted Tandberg leave to amend. Ex. 10, Dkt. No. 350.

The Northern District of California's familiarity with the family of the patents-in-suit counsels in favor of transfer. In particular, the Northern District of California has considered the same invalidity and inequitable conduct issues that will likely be relevant to this case. Ex. 13 at 7; Ex. 11, Dkt. Nos. 252, 313, 405. The Northern District of California is also familiar with the prosecution history of the family of the patents-in-suit and the testimony of at least one of the named inventors—Lester Ludwig. Ex. 13 at 1-2.

In addition to its familiarity with the family of the patents-in-suit, the Northern District of California has local patent rules that are formulated to aid in the timely disposition of patent cases. The local patent rules provide for the early disclosure of infringement and invalidity contentions, and claim construction positions. These rules ensure that patent litigations proceed

---

[4] Patent Application No. 08/131,523 eventually issued as U.S. Patent No. 5,689,641.
[5] Under 35 U.S.C. § 102(b), at least the parent application would be invalid if Vicor sold or offered for sale the subject inventions more than one year before the October 1, 1993 filing date of the parent application.

11

in an efficient manner with adequate notice of the parties' positions on patent-litigation-specific issues.

Accordingly, the interests of justice favor transfer to the Northern District of California.

*          *          *

In short, the convenience factors and interests of justice overwhelmingly favor transfer to the Northern District of California. Therefore, the Court should transfer this case to the Northern District of California pursuant to Section 1404(a).

### D. Plaintiff's Choice of Forum Is Not Entitled To Substantial Weight

Pragmatus's choice of forum in this litigation is entitled to little if any weight, as there is little if any connection between its patent infringement claims and the Eastern District of Virginia. Although deference is often given to a plaintiff's choice of forum, the fact that a plaintiff filed suit in its home district does not preclude transfer to a more convenient forum. *Bd. of Trustees*, 702 F. Supp. at 1257. Indeed, this Court has explained that, "the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action. For obvious reasons, the plaintiff's choice is entitled to less weight where there is little to connect the chosen forum with the cause of action." *Id*. at 1256.

As this Court has recognized, there is a general rule in patent litigations that "the preferred forum is that which is the center of the accused activity.... 'The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (citation omitted). Courts applying this center of gravity analysis have explained that "[a]ppropriate considerations include the location of a product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather than

12

where limited sales activity has occurred." *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (citations omitted). This Court has regarded the center of gravity analysis as a "shorthand reference to the convenience of witness and access to evidence components" of the transfer analysis. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 638 (E.D. Va. 2003).

Based upon the analysis of the convenience factors above, it is clear that the Northern District of California is not only the more convenient forum, it is the center of gravity of this patent litigation. The Eastern District of Virginia has little to no connection with the cause of action alleged by Pragmatus in this litigation. Although it is possible that Virginia residents have utilized the Facebook's accused systems and services from within this District, the same could likely be said for any district in the country because those systems and services are equally accessible from anywhere in the country through the Internet. This Court has consistently granted very little weight to such attenuated contacts. *See Lycos*, 499 F. Supp. 2d at 692-93 (transferring case to District of Massachusetts despite allegedly infringing sales to Virginia residents because "defendants likely have this same contact with every other state in this nation").

Pragmatus should not be permitted to drag this litigation away from the Northern District of California—the location where the predominant majority of activity relating to both the patents-in-suit and the accused infringing services has heretofore occurred—simply because it chose to secure office space and file registration papers in Virginia just before buying the patents-in-suit and filing this suit. Such behavior smacks of forum shopping. Virtually all of the likely evidence and witnesses relevant to this case are found in the Northern District of California, but virtually none are found in the Eastern District of Virginia. Accordingly,

Pragmatus's choice of forum should be entitled to little, if any, weight.

Therefore, the Northern District of California is plainly the "preferred forum" and this Court should accordingly transfer this case to that district.

### IV.     **CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).


Dated: January 21, 2011                                       Respectfully submitted,

                                                              By:   */s/ Justin P.D. Wilcox*
                                                              Justin P.D. Wilcox (VA Bar No. 66067)
                                                              jwilcox@cooley.com
                                                              Scott A. Cole (VA Bar No. 74771)
                                                              scole@cooley.com
                                                              Cooley LLP
                                                              11951 Freedom Drive
                                                              Reston, VA 20171
                                                              Telephone:  703-456-8000
                                                              Facsimile:  703-456-8100


                                                              Attorneys for Defendant Facebook, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of January, 2011, I will electronically file the foregoing MEMORANDUM IN SUPPORT OF FACEBOOK INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

      Mark W. Wasserman (VSB #22638)
      Matthew R. Sheldon (VSB #41892)
      *Counsel for Plaintiff, Pragmatus AV, LLC*
      REED SMITH LLP
      3110 Fairview Park Drive
      Suite 1400
      Falls Church, Virginia 22042
      Telephone: (703) 641-4229
      Facsimile:  (703) 641-4340
      mwasserman@reedsmith.com
      msheldon@reedsmith.com

*/s/ Justin P.D. Wilcox*
Justin P.D. Wilcox (Va. Bar No. 66067)
jwilcox@cooley.com
COOLEY LLP
One Freedom Square, Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: 703.456.8000
Facsimile: 703.456.8100

*Attorneys for Facebook, Inc.*